UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────────────────

THEODORE R. WILLETTE,

           Plaintiff,

    v.                                  Case No. 21-cv-917-bhl

HEIDI MICHEL, et al.,

           Defendants.

─────────────────────────────────────────────────────────

**DECISION AND ORDER**

─────────────────────────────────────────────────────────

      More than three years ago, Plaintiff Theodore Willette, through counsel, brought this lawsuit alleging that thirteen named individuals, along with six unnamed Jane Doe Defendants, violated his civil rights while he was a pre-trial detainee at the Brown County Jail. Dkt. No. 1. The Court screened the original complaint on August 20, 2021 and allowed Willette, who suffers from mental health issues, to proceed on a Fourteenth Amendment conditions-of-confinement claim related to his treatment at the jail. Dkt. No. 2. A few months later, on January 20, 2022, the Court entered a scheduling order, setting deadlines for Willette to identify the "Jane Doe" Defendants (April 29, 2022) and for the parties to complete fact discovery (October 31, 2022) and file dispositive motions (February 17, 2023). Dkt. No. 10. In response to requests from the parties, the Court has (patiently) approved *five* separate amendments to the schedule. Dkt. Nos. 29, 84, 90, 95, & 137. Willette has also amended his claims twice. Dkt. Nos. 24 & 30. The operative pleading, Willette's second amended complaint, now asserts a Fourteenth Amendment conditions-of-confinement claim, a Fourteenth Amendment excessive force claim, a corollary "official

capacity" claim, and a claim under the Prison Rape Elimination Act (PREA). Dkt. No. 30, ¶¶43-56.

Willette is represented by counsel, but that has unfortunately not resulted in a more orderly or efficient process for this litigation. The second amended complaint is confusing and at times reads more like a brief than a pleading. The Court and Defendants are left with considerable work just to figure out the legal claims being alleged. Counsel has also shown a significant disregard for procedure. For example, shortly after the complaint was filed, he filed nearly a dozen sets of discovery requests on the docket, contrary to the instructions in Federal Rule of Civil Procedure 5(d)(1)(A). Dkt. Nos. 11-21. And, when counsel filed the second amended complaint, he did not attempt to obtain Defendants' consent or the Court's permission as required by Rule 15, a failure the Court excused in the interest of moving the case forward. Dkt. No. 39. Counsel also struggled to serve the Second Amended Complaint, Dkt. Nos. 57 & 64, and those failures ultimately led the Court to dismiss two of the originally named Defendants. Dkt. No. 87. Willette's expert disclosures were also "woefully deficient" under Rule 26, even after he was allowed multiple chances at amendment. Dkt. No. 110. Counsel even failed to appear for an October 11, 2023 telephone hearing set by the Court to address a host of pending discovery motions. Dkt. No. 122.

Notwithstanding these obstacles, the parties completed discovery and two groups of Defendants[1] have filed motions for summary judgment. Dkt. Nos. 149 & 163. These groups label themselves: (1) the "County Defendants"— Sheriff Todd Delain, Jail Administrator Heidi Michel, Corporal (Cpl.) Nicole Hambly, Lieutenant (Lt.) Jolly, Cpl. Karla Kuchta, Cpl. Dustin Dimmer,

---

[1] Several other Defendants have already been dismissed. Two were dismissed for lack of timely service. Dkt. No. 87. Two others were dismissed by stipulation. Dkt. No. 146. The Court will now also dismiss Defendant "Dr. J. D," whom Willette has named but never identified despite ample chances. *See* Civ. L. R. 41(c) (E.D. Wis.). The Court will also dismiss Defendant Mallory S. (apparently Mallory Short), who has not been served even more than two years after being named as a defendant. *See* Dkt. No. 74; *see also* Civ. L. R. 41(a).

Correctional Officer (CO) Blayne Lanser, CO Michael Laux, CO Wade Delorit, CO Jason Free, CO Christopher Kujava, and CO Zachary Olsen; and (2) the "Medical Defendants"—Nurses Ava Gonzelez and Emily Blozinski, and Mental Health Coordinator (MHC) Przybelski. The motions are now fully briefed, although as discussed below, Willette's counsel's summary judgment practice reflects a continued serious disregard for procedure. Also pending are cross-motions for sanctions. Dkt. Nos. 130 & 191. For the reasons below, Defendants' motions for summary judgment will be granted and the case dismissed. The cross-motions for sanctions will be denied.

I.  **Defendants' Motions for Summary Judgment**

Willette's remaining claims are: (1) a Fourteenth Amendment conditions-of-confinement claim arising from his placement in a "safety cell" at the jail, along with denial of certain items, such as toilet paper, water, and hygiene materials, while in the safety cell; (2) a Fourteenth Amendment excessive force claim relating to his placement in a "restraint chair" on December 8, 2019 and January 2, 2020, along with the use of a "secure shower" on December 16, 2019 and January 5, 2020; (3) an "official capacity" claim in connection with the jail's policies and procedures involving use of a safety cell, restraint chair, and secure shower; and; (4) a PREA claim in connection with the manner in which his secure showers were conducted.[2] Dkt. No. 30, ¶¶38,

---

[2] In addition to these claims, Willette also mentions supervisory liability for the lieutenants; the failure to receive a "due process hearing" before being placed in a safety cell; nurses allegedly not giving him his prescription medications at the time he arrived at the jail; and Nurse Jensen allegedly sexually assaulting him during his secure showers by scrubbing his body with a sponge without his consent. *See* Dkt. No. 30, ¶53; *see also* Dkt. Nos. 173 & 174. None of these passing complaints are identified as separate claims and all are without merit, even if they had been properly pleaded. For example, there is no supervisory liability under Section 1983, *see Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009), and the lieutenants have already been voluntarily dismissed from this case. *See* Dkt. No. 146; *see also* Dkt. No. 173, ¶118. There is no requirement that the County provide a due process hearing before placement in a safety cell because an inmate is not being deprived of a "liberty" interest as a disciplinary measure—rather it is for protection. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (noting that "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes."). Further, all nurses have already been dismissed from this case. *See* Dkt. No. 87; *see also* Dkt. No. 174, ¶120. And Nurse Jensen has never been a defendant in this case. *See* Dkt. Nos. 1, 24, & 30.

40-42, & 47.  Both the County Defendants and the Medical Defendants seek summary judgment on all claims.  Dkt. Nos. 149 & 163.

Willette's response to the motions leaves much to be desired.  Even after being granted an extension, counsel filed the response materials two days *late*.  Dkt. Nos. 173-177.  They were followed the next day by a "Motion for Supplemental" that accuses Defense counsel of unspecified "potential bad faith, harassment and misconduct."  Dkt. No. 179.  Counsel offered no support for these serious accusations.  The response materials also included a "Declaration of Authentication" signed by Counsel in which he generically and sweepingly purports to authenticate all the exhibits submitted with the opposition.  Dkt. No. 180.  Most problematically, however, the opposition filings failed to comply with Willette's basic obligations as a party opposing summary judgment.  The responses do not reproduce and respond to each numbered paragraph in Defendants' proposed statements of undisputed facts as required by Civil Local Rule 56(b)(2)(b).  They are also unsupported by citations to specific evidence as required by the same rule.  Instead, counsel spewed 1,225 pages of unsupported proposed facts, argument, declarations, and exhibits on to the docket.  *See* Dkt. Nos. 173-178.  Willette's own affirmative "proposed facts" are also noncompliant.  Dkt. No. 176.  They do not contain any *specific* factual allegations against specific individual defendants.  In fact, the only individuals mentioned by name in these proposed facts are Officer Haines (not a defendant), Officer Pearson (not a defendant), MHC Przybelski, Michelle Wilke (not a defendant), Dawn VanBuren (not a defendant), Officer Free, Nurse Jensen (not a defendant), Psychologist Bradley (not a defendant), Sheriff Delain, Jail Administrator Michel, and Cpl. Dimmer.  *See id*.  Additionally, most of the proposed factual propositions are not supported by *any* evidentiary citations, and the few that cite to *some* evidence, do not include "specific references to the affidavits, declarations, parts of the record, and other supporting materials relied

upon to support the fact described in that paragraph." *See* Civ. L. R. 56(b)(2)(B)(i) or 56(b)(1)(C)(i); *see also* Fed. R. Civ. P. 56(c)-(d). Instead, proposed facts often simply cite to, for example, "Deposition Michels," "Wellpath Records," and "Activity Logs," with the apparent expectation that the Court and Defendants will then dig through the 1100+ pages of exhibits to intuit and find the portions counsel intended to cite.[3] Still other proposed facts include *incorrect* citations that do not support the proposition for which they are cited. Willette cites, for example, "Ex. 023" (Wellpath Records) and "Ex. 024" (Jail Administrator Michel's Interrogatories) in support of the proposition that he "was not a threat to himself or anyone else, the restraint chair was unnecessary." *See* Dkt. No. 176, ¶24. But Jail Administrator Michel's Interrogatories do not discuss that topic at all, likely because she is not a mental health care provider and never interacted with Willette at the jail. *See* Dkt. Nos. 177-23. And the 758 pages of "Wellpath Records" show numerous attempts at self-harm, hardly support for the proposition that Willette was not a threat to himself. *See* Dkt. No. 177-24.

These violations will not be ignored or excused. Under Civil Local Rule 56(b)(4), a failure to properly respond to an opponent's proposed statement of undisputed fact results in those facts being deemed undisputed for purposes of summary judgment. The Court has been patient with Willette and his counsel for three years, but these failures at summary judgment have

---

[3] Willette's response materials include the filing of several pictures of the interior of the jail that were designated confidential under the Stipulated Protective Order in this case. Counsel for Willette filed them on the public docket in violation of the Stipulated Protective Order. County Defendants subsequently filed a motion to restrict those documents to case participants. *See* Dkt. No. 185. While there is a strong presumption of public disclosure of case materials, the Court may restrict certain documents for "good cause." *See* Gen. L. R. 79(d)(3). County Defendants explain that the pictures they seek to restrict include the inside of a solitary confinement cell, the inside a cell containing a restraint chair, and the restraint chair itself including the various straps and head/arm rests used to restrain. They state that knowledge of the jail's interior cell layout, including equipment used to restrain inmates, could be used to break free from restraints, which could harm jail staff, other inmates, or the inmate himself. *Id*. This is sufficient good cause. Moreover, the Court did not rely on these pictures to resolve the pending motions and thus restriction of these pictures will not impede the public's ability to understand the case or this order. *See Syngenta Crop Prot.,* 764 F.3d at 698 (noting that the public does not have a right to access documents that do not aid in the understanding of "judicial decisionmaking.").

consequences. Willette's failure to identify specific facts supporting his claims against each specific individual defendant means that there are no factual disputes for trial. The Court will therefore deem the County Defendants' and the Medical Defendants' statements of proposed undisputed facts as undisputed for purposes of summary judgment. Based on the undisputed facts submitted by Defendants, and deemed true by the Court, the Court concludes that Defendants are entitled to judgment as a matter of law and their motions for summary judgment will be granted. Additionally, and in the alternative, pursuant to Civil Local Rule 56(b)(9), the Court finds that Willette and his counsel's failure to comply with the local rules in drafting his "response materials" is sufficient cause for the Court to grant the motions for summary judgment as a sanction for noncompliance. The Court's decision to grant summary judgment for Defendants rests on this independent ground as well.

Willette's claims against six of the remaining Defendants are easily resolved. Willette himself admits that he does not have enough evidence to continue with his claims against Nurse Gonzales, Nurse Blozinski, and Lt. Jolly. *See* Dkt. No. 173, ¶118; Dkt. No. 174, ¶120. All three are therefore entitled to summary judgment on all claims against them. And the record establishes that Jail Administrator Michel, Cpl. Dimmer, and Cpl. Kuchta had no contact with Willette while he was at the jail. *See* Dkt. No. 169, ¶¶28, 35, & 102. They therefore lack personal involvement in the alleged violations and cannot be held liable under Section 1983. *See Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) (noting that Section 1983 limits liability to individuals who are personally responsible for a constitutional violation.). Therefore, these individuals are also entitled to summary judgment on all claims against them as well.

Willette's Fourteenth Amendment conditions of confinement and excessive force claims against the remaining defendants also fail based on the undisputed facts. Willette challenges MHC

Przybelski's decision to place him in a "safety cell" while at the jail; MHC Przybelski's decision to place him in a "restraint chair" on December 8, 2019 and January 2, 2020; and the manner in which Officer Free conducted "secure showers" on December 16, 2019 and January 5, 2020. Dkt. No. 30, ¶¶38, 40-42, & 47; *see also* Dkt. No. 176. Willette states that the remaining defendants denied him hygiene items, water, and a clean cell throughout his time at the jail, but as noted above, he has no specific factual allegations against any of those individuals. *See* Dkt. No. 176.

The standard under the Fourteenth Amendment, for both conditions of confinement and excessive force, is "objective reasonableness." *Miranda v. County of Lake*, 900 F.3d 335, 352–54 (7th Cir. 2018); *see Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Under that standard, as recently clarified by the Seventh Circuit in *Pittman v. Madison County*, 108 F.4th 561, 566 (7th Cir. 2024), the sole question with respect to a Defendant's conduct is an "objective one"—did the defendant act "reasonably" under the circumstances. *Id*. In determining whether a challenged action is objectively unreasonable, the Court must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819, (7th Cir. 2020).

The undisputed record establishes that MHC Przybelski ordered Willette's placement in a safety cell, along with the use of a restraint chair on December 8, 2019 and January 2, 2020, because he self-reported that: (1) he has made three suicide attempts in the past, (2) he was a 10/10 on the suicide self-rating scale, (3) he was hallucinating, (4) he did not like his medications and had been actively "trying to get off" of them, (5) he was biting himself so aggressively that he caused redness and wounds on his skin, (6) he was hitting his head against the wall so hard it cracked his tooth, and (7) he was terrified about being in jail and did not want to be around others. Dkt. No. 165, ¶¶12, 14, 19, 20, 26, 31, 33, 35, 40, 58, 59, 64, 67, 71, 79, & 86; *see also* Dkt. No. 169, ¶¶107-109. Based on these self-reports, coupled with extensive medical records showing

7

Case 2:21-cv-00917-BHL    Filed 09/26/24    Page 7 of 14    Document 197

suicidal ideation, no reasonable jury could conclude that MHC Przybelski's orders to place Willette in a safety cell, including two uses of a restraint chair, was objectively unreasonable. *See e.g., Williams v. Haure*, No. 18-CV-730-WMC, 2021 WL 1721603, at *8 (W.D. Wis. Apr. 30, 2021) (concluding that use of a restraint chair was reasonable in light of Plaintiff's "general history" of self-harm.) Instead, the record confirms that her decision to use a safety cell and/or restraint chair was reasonable because it was for his own safety. Przybelski is therefore entitled to summary judgment.

A safety cell is a rubber coated cell in which jail personnel allow only minimal items and structures to protect the inmate. Dkt. No. 164, ¶¶10-11; *see also* Dkt. No. 169, ¶¶68-103. It is used to prevent an individual from self-harm. *Id*. The only items permitted in a safety cell are a suicide smock and a suicide blanket—all other items (including toilet paper, soap, toothpaste, toothbrush, other types of hygiene materials, and showers) must be requested then approved by mental health staff, consistent with the jail's rules and procedures. *Id*. The undisputed facts confirm that water was distributed every hour; a clean smock and blanket were distributed every week; and cells were cleaned when there was a change in inmate and at least once a week sometimes more depending on need. *Id*.

It is also undisputed that Cpl. Hambly, CO Lanser, CO Laux, CO Delorit, CO Free, Cpl. Kujava, and CO Olson had no authority to place/remove Willette from the safety cell or the restraint chair. Dkt. No. 169, ¶¶ 25, 33, 42-43, 45-46, 59, 126-27, 135, 137, 139-40, 148, 150, 161-62, 171, 173, 180, 183, & 188. They similarly had no authority to approve a secure shower upon his request. *Id*. They also had no authority to approve providing him additional hygiene items upon his request. *Id*. It is also undisputed that they followed the jail's rules and procedures for cleaning the cell once a week, providing water every hour, conducting secure showers, and

providing hygiene items once approved by mental health staff; and they never saw or smelled any feces or urine in his cell. *Id*. In fact, there is no notation by staff anywhere in Willette's inmate file regarding complaints about the condition of his cell. *Id*. These individuals (with the exception of CO Free) are also not mentioned anywhere in Willette's "proposed facts" as having done anything wrong. *See* Dkt. No. 176.

In the end, Willette's vague and conclusory allegations depicting jail as a generally smelly, dirty, and unpleasant place to be – all made without any specific evidentiary support – are insufficient to create material factual disputes given County Defendants' own specific and well-supported factual assertions denying involvement. *See Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist., 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("[T]o withstand summary judgment, the non-movant must allege *specific* facts creating a genuine issue [of fact] and may not rely on vague, conclusory allegations.").

With respect to CO Free, Willette's only allegation is that "Officer Free along with two other officers placed Willette in a belly belt and placed him in the shower." Dkt. No. 176, ¶47. Willette goes on to state that Nurse Jensen (not a defendant) was the individual who "scrubbed Willette with a sponge while he was nude and did not give her permission to touch him." *Id*., ¶48. This narrative is consistent with CO Free's declaration. *See* Dkt. No. 150, ¶18. Thus, Willette's own "proposed facts" acknowledge that CO Free was not personally involved in conducting the secure shower. Based on this record, no reasonable jury could conclude that any of the Defendants violated his Fourteenth Amendment rights. Accordingly, MHC Przybelski, Cpl. Hambly, CO Lanser, CO Laux, CO Delorit, CO Free, Cpl. Kujava, and CO Olson are entitled to judgment on the merits.

9

Case 2:21-cv-00917-BHL     Filed 09/26/24     Page 9 of 14     Document 197

Willette's official capacity claim against Sheriff Delain also fails. Willette's claim against Sheriff Delain appears to be based on his discontent with the policies and procedures in place at the jail for use of a safety cell, restraint chair, and secure showers. Dkt. No. 30, ¶¶13 & 17; *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 344 (7th Cir. 2018) (noting that a sheriff has "final policymaking authority" over jail operations and can be liable for an official-capacity claim "targeted at policies and customs that deprive inmates of their federal rights," provided the policies and customs cause a constitutional injury.) Willette alleges, for example, that the jail's policy of having no running water, no sinks, and no toilets in a safety cell is inhumane. Dkt. No. 30, ¶32. He argues that the policy to deny hygiene items, including water, toilet paper, soap, toothpaste, toothbrushes, deodorant, and shampoo, without prior approval from mental health staff is inhumane. *Id.*, ¶33. He further contends that the use of handcuffs and a waist-belt, along with scrubbing by nurses, during a secure shower is inhumane. *Id.*, ¶40.

But, as explained above, and more thoroughly outlined in County Defendants' proposed facts and brief, the jail's policies and procedures are in place for the purpose of keeping inmates prone to self-harm *safe*. See Dkt. No. 168, ¶¶69-103. While the Court will not detail the justification provided for *every* policy and procedure in place in the jail in connection with use of a safety cell, restraint chair, and secure showers, it is fair to say that the County Defendants and Sheriff Delain has satisfactorily explained the basis for these policies and procedures. For example, toilet paper is not allowed in a safety cell unsupervised because it can be fashioned into a rope-like noose to hang oneself. *See* Dkt. No. 168, ¶¶69-103. Indeed, the record shows that Willette in fact created a noose out of toilet paper on January 9, 2020 and January 13, 2020. *See* Dkt. No. 165, ¶¶ 78 & 80. Other items, such as metal that can be broken off from a sink/toilet and plastic that can be broken off from a toothbrush, can be converted into sharp objects to self-harm;

and liquids, such as soap, toothpaste, shampoo, etc., can be consumed, or used in a manner for which it is not intended, for the purpose of causing pain or self-harm. *See* Dkt. No. 168, ¶¶69-103. County Defendants provide reasonable explanations for their policies and procedures at the jail, and Willette's failure to respond with specific articulations of why he believes a particular safety measure is "unreasonable" and causes constitutional injury dooms his claim against Sheriff Delain. *See Miranda*, 900 F.3d at 344 (noting that Plaintiff's official capacity claim against the sheriff failed because he did not explain why a "system [that] included a series of reasonable measures" caused Plaintiff's injury).

The Court also notes that "observation checks" are conducted in a safety cell every 15 minutes. Dkt. No. 169, ¶89. In light of this constant monitoring, the policy to require an inmate to request toilet paper, water, soap, toothpaste, toothbrushes, deodorant, and shampoo when needed is not unreasonable, though it may appear extreme at first blush. And while reasonable policies and procedures can be rendered "unreasonable" by the manner in which it is executed by individual employees, where there is no underlying constitutional violation by an individual municipal employee, there is no official capacity claim against Sheriff Delain. *Doxtator v. O'Brien*, 39 F.4th 852, 864 (7th Cir. 2022); *Sallenger v. City of Springfield,* 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable when there is no underlying constitutional violation by a municipal employee."). In sum, Willette's generalized and otherwise unsubstantiated description of his time at the jail is troubling (if true), but it is inconsistent with the actual practices and documented rules, policies, and procedures of the jail as established through County Defendants' proposed facts and briefing. Willette's lack of factual development on *when* certain incidents allegedly happened, *who* was allegedly involved in those incidents, and what these individuals allegedly said or did during these incidents prevents him from creating a genuine

11

dispute of material fact regarding an "unofficial" custom or policy at the jail that may have violated his rights. Given that Willette had the assistance of counsel (of his own choosing) throughout the case, and given that the parties conducted two and a half years of discovery, these facts, if they were actually genuinely disputed, would be clear. They are not. At this point, there is nothing for the jury to determine through a trial. Therefore, Sheriff Delain is also entitled to summary judgment.

Finally, the Court notes that Willette's second amended complaint and "response briefs" mention at least one PREA complaint he filed. S*ee* Dkt. No. 30, ¶40; see also Dkt. Nos. 173 & 174. To the extent Willette intended to pursue a specific claim under PREA, he cannot. There is no private right of action under the Prison Rape Elimination Act (PREA). *See McIntyre v. Gunderson*, No. 22-CV-1566-BHL, 2023 WL 2587672, at *3 (E.D. Wis. Mar. 21, 2023) ("[A]lthough the PREA is a federal law, it does not create a private cause of action. See 34 U.S.C. §§ 30301–30309); *Bentley v. Baenen*, 2018 WL 1108701 (E.D. Wis. Feb. 27, 2018) ("The PREA does not create a private cause of action in federal court."). The Court will grant Defendants' motions for summary judgment and dismiss this case.

## II. The Parties' Cross-Motions for Sanctions

On November 1, 2023, Defendants filed a joint motion for sanctions based on Willette's continued refusal to sit for a deposition. Dkt. No. 130. Specifically, the night before the first day on which the parties had scheduled his deposition, Willette attempted to quash or prevent the deposition from proceeding, insisting that even though he is the plaintiff in this case he should not have to sit for a deposition because testifying about the events underlying this lawsuit cause him severe anxiety. Dkt. No. 135. The parties discussed rescheduling the deposition to a date in the following weeks, and Willette initially agreed to participate in that rescheduled deposition, but

Willette later indicated that he would not sit for a deposition at all due to anxiety. *Id*. After Court intervention, including a warning that Willette could not refuse to sit for a deposition in a case he decided to initiate, Willette's deposition eventually occurred on November 20, 2023. *See* Dkt. No. 138. Given that the deposition did eventually occur, the Court will deny Defendants' joint motion for sanctions as moot. Counsel is admonished not to engage in such uncooperative behavior in the future.

On August 14, 2024, Willette filed a motion for sanctions claiming that Defense counsel gave the Brown County District Attorney confidential materials from this case. Dkt. No. 191. Based on docket filings, it appears that the Brown County district attorney acquired information about this case, through the public docket, after Willette filed a "John Doe" action in state court requesting that the district attorney pursue criminal charges against certain Defendants in this case based on the allegations in this case. Dkt. No. 191-2. There is a strong presumption that "[d]ocuments that affect the disposition of federal litigation are presumptively open to public view" and "litigants who enjoy publicly subsidized dispute resolution should expect public oversight." *See City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697-98 (7th Cir. 2014). This means that any member of the public can look at the filings in this case, and there is nothing improper about the district attorney looking at the documents filed in this case, even if defense counsel allegedly provided these documents to the district attorney. It bears noting that, in this case, the district attorney's interest in this matter appears to have been triggered by Willette's own filing of a John Doe proceeding in state court asking the district attorney to pursue criminal charges based on the allegations in this case. Willette cannot ask the district attorney to look into this case then complain when she does so. Willette also filed his entire medical file on the docket without any request to seal or restrict, *see* Dkt. No. 177, so he cannot now complain

13

that the public can see his medical records. Willette has not established any basis to impose sanctions; therefore, the Court will deny his motion for sanctions too.

### III. Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that Mallory Short and "Dr. J. D." are **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that the parties' motions for sanctions (Dkt. Nos. 130 & 191) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to restrict photographs of the jail's internal layout (Dkt. No. 185) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment (Dkt. Nos. 149 & 163) are **GRANTED** and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on September 26, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge